[No. D061239. Fourth Dist., Div. One. June 14, 2012.]

In re A.G. et al., Persons Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
HUGO G., Defendant and Appellant.

## COUNSEL

Elizabeth C. Alexander, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Dana C. Shoffner, Deputy County Counsel, for Plaintiff and Respondent.

Suzanne F. Evans, under appointment by the Court of Appeal, for Minors.

## OPINION

**AARON, J.**—Presumed father Hugo G. appeals a judgment following the dispositional hearing in the juvenile dependency case of his sons, Erick G. and Edwin G. (together, the boys).[1] Hugo contends that the court erred in denying him reunification services. We affirm.

---

[1] The notice of appeal also refers to Hugo's daughters, A.G. and Brianna G., but Hugo does not raise any issues as to them. We mention A.G. and Brianna only as necessary to our discussion of Hugo's contentions regarding the boys.

# I

## *Background*

In October 2011, the San Diego County Health and Human Services Agency (the Agency) filed dependency petitions on behalf of 11-year-old A.G. (Welf. & Inst. Code, § 300, subd. (d) [sexual abuse]),[2] and on behalf of eight-year-old Erick, three-year-old Edwin and nine-month-old Brianna (§ 300, subd. (j) [abuse of a sibling]).[3] The petitions alleged that on January 26, 2010, Hugo sexually abused A.G. Specifically, the petitions alleged that Hugo forced A.G. to remove her clothing, touched her vaginal area with his hand, removed his pants and asked her to touch his penis and attempted to penetrate her anus with his penis.

A.G. and Erick were detained at Polinsky Children's Center, and Edwin and Brianna were detained in a foster home. At the October 20, 2011, detention hearing, the court authorized voluntary services for Hugo, and ordered that his visits with the boys be supervised.

In November 2011, the Agency filed amended petitions. The amended petitions contained additional allegations that between September 2010 and October 17, 2011, Hugo physically abused A.G., Erick and Edwin. (§ 300, subd. (a) [serious physical harm inflicted nonaccidentally].)[4] Specifically, the amended petitions alleged that Hugo hit them with a belt, leaving marks and bruises on their legs. The children's mother, Martha H., saw the bruises but was unable to stop Hugo from hitting A.G., Erick and Edwin. In October 2010, in Martha's presence, Hugo slapped A.G. and "hit her on the eye with his finger . . . ." A.G., Erick and Edwin were afraid of Hugo.

In November 2011, the children were detained with the paternal grandparents at Hugo and Martha's home, and Hugo and Martha moved out. At the November 9 detention hearing on the amended petitions, Hugo's counsel requested that the court order the Agency to refer Hugo to a 52-week child abuse class. The court denied the request.

On January 3, 2012, the court made true findings on the amended petitions. During the dispositional phase of the hearing, the court asked for further argument regarding the section 300, subdivision (j) counts in the boys' amended petitions. After hearing argument, the court dismissed those counts.

---

[2] All further statutory references are to the Welfare and Institutions Code.

[3] We refer to the boys, A.G., and Brianna, together, as "the children."

[4] The amended petition on behalf of Brianna was based on Hugo's physical abuse of A.G., Erick and Edwin. (§ 300, subd. (j).)

The court declared the children dependents and ordered them removed from Hugo and Martha's custody and placed with a relative. The court ordered reunification services for Martha and denied services for Hugo. The court allowed Hugo to have supervised visitation with the boys and Brianna, and ordered that there be no contact between Hugo and A.G.

## II

### The Court Did Not Err in Denying Hugo Reunification Services

█ Section 361.5, subdivision (b) provides exceptions to the general entitlement to reunification services set forth in section 361.5, subdivision (a). "Reunification services need not be provided to a parent . . . when the court finds, by clear and convincing evidence" that an exception set forth in section 361.5, subdivision (b)(6) or (7) applies. (§ 361.5, subd. (b).) In A.G.'s case, the court applied the exception set forth in section 361.5, subdivision (b)(6). That exception allows the court to deny reunification services when "the child has been adjudicated a dependent . . . as a result of severe sexual abuse . . . [of] the child . . . by a parent . . . , and the court makes a factual finding that it would not benefit the child to pursue reunification services with the offending parent . . . ." (§ 361.5, subd. (b)(6).) As to the boys, the court relied on the exception set forth in section 361.5, subdivision (b)(7). █ That exception allows the court to deny services when "the parent is not receiving reunification services for a sibling or a half sibling of the child pursuant to paragraph . . . (6)."[5] (§ 361.5, subd. (b)(7).)

"In determining whether reunification services will benefit the child pursuant to [section 361.5, subdivision (b)(7)], the court shall consider any information it deems relevant, including the following factors: [¶] (1) The specific act or omission comprising the severe sexual abuse . . . inflicted on . . . the child's sibling or half sibling[;] [¶] (2) The circumstances under which the abuse or harm was inflicted on . . . the child's sibling or half sibling[;] [¶] (3) The severity of the emotional trauma suffered by the child or the child's sibling or half sibling[;] [¶] (4) Any history of abuse of other children by the offending parent . . . [;] [¶] (5) The likelihood that the child may be safely returned to the care of the offending parent . . . within 12

---

[5] The exception in section 361.5, subdivision (b)(6) also applies when "the child has been adjudicated a dependent . . . as a result of severe sexual abuse . . . [of] . . . a sibling . . . or a half sibling by a parent . . . , and the court makes a factual finding that it would not benefit the child to pursue reunification services with the offending parent . . . ." (§ 361.5, subd. (b)(6).) Section 361.5, subdivision (b)(6) did not apply in the boys' cases because the court dismissed the section 300, subdivision (j) allegations.

Hugo does not challenge the denial of services in A.G.'s case.

months with no continuing supervision[;] [¶] (6) Whether or not the child desires to be reunified with the offending parent . . . ." (§ 361.5, subd. (i).)

■ " ' "[O]nce it is determined one of the situations outlined in [section 361.5,] subdivision (b) applies, the general rule favoring reunification is replaced by a legislative assumption that offering services would be an unwise use of governmental resources. [Citation.]" ' [Citation.]" (*In re William B.* (2008) 163 Cal.App.4th 1220, 1227 [78 Cal.Rptr.3d 91].) Thus, "[t]he court shall not order reunification for a parent . . . described in [section 361.5, subdivision (b)(6) or (7)] unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child." (§ 361.5, subd. (c).) "The burden is on the parent to . . . show that reunification would serve the best interests of the child." (*In re William B.*, at p. 1227.) The best interests determination encompasses a consideration of the parent's current efforts, fitness and history; the seriousness of the problem that led to the dependency; the strength of the parent-child and caretaker-child bonds; and the child's need for stability and continuity. (*Id.* at p. 1228, quoting *In re Ethan N.* (2004) 122 Cal.App.4th 55, 66–67 [18 Cal.Rptr.3d 504].) A best interests finding also requires a likelihood that reunification services will succeed. (*In re William B.*, at p. 1228.) "In other words, there must be some 'reasonable basis to conclude' that reunification is possible before services are offered to a parent who need not be provided them. [Citation.]" (*Id.* at pp. 1228–1229.)

■ As noted above, under section 361.5, subdivision (b)(7) the court may deny reunification services when "the parent is not receiving reunification services for a sibling or a half sibling of the child pursuant to paragraph . . . (6)." (§ 361.5, subd. (b)(7).) This statutory language is unambiguous. Thus, " 'we presume the Legislature meant what it said, and the plain meaning of the language governs.' " (*In re Austin P.* (2004) 118 Cal.App.4th 1124, 1129 [13 Cal.Rptr.3d 616].) We therefore reject Hugo's suggestion that section 361.5, subdivision (b)(7) is inapplicable to the boys because the court concluded that they were not at risk of sexual abuse and dismissed the section 300, subdivision (j) allegations. Hugo's reliance on *In re Maria R.* (2010) 185 Cal.App.4th 48 [109 Cal.Rptr.3d 882] and similar cases is unavailing. The holding in that case was a narrow one. In *In re Maria R.*, this court concluded that a parent's sexual abuse of a daughter does not necessarily mean that a son is at risk of sexual abuse by that parent. (*Id.* at pp. 63, 67–68.) However, we also stated that it is a "commonsense notion that any child who is residing with a parent . . . who has sexually abused the child's sibling, and/or a parent who has minimized the sexual abuse of the child's sibling, is living in a dysfunctional and potentially harmful environment." (*Id.* at p. 68.) Thus, rather than supporting Hugo's argument that his sexual abuse of A.G. does not indicate that he poses a danger to the boys, *Maria R.* suggests that Hugo

*does* pose a risk to the boys by creating a "dysfunctional and potentially harmful environment." (*Ibid.*)

 Further, section 361.5, subdivision (i) expressly provides that in determining whether to deny services pursuant to section 361.5, subdivision (b)(7), "the court shall consider any information it deems relevant, including" the severe sexual abuse of the sibling. (§ 361.5, subd. (i)(1).) The court found that Hugo's anal-genital contact with A.G. and his penetration of her vagina with his finger constituted severe sexual abuse. (*Ibid.*)

Other factors in section 361.5, subdivision (i) also support the denial of services in this case. Hugo's sexual abuse of A.G. occurred in the family home, on a bed where Edwin was sleeping. Erick was asleep in the same room at the time. Hugo denied that he had sexually abused A.G., but admitted that he had bathed with her until she was about eight years old, and claimed that "she would always stare at his penis." He also stated that when she was nine years old, she became promiscuous, and he did not "like it when she [wore] short dresses or little shorts." In discussing A.G. with the social worker, Hugo asked, "[H]ave you seen her body, how developed she is?" Hugo said that he had told A.G. that boys should not "touch her body, on top or bottom," and added that in telling A.G. this, he might have pointed to her breasts and crotch area. Hugo claimed that A.G. might have become confused and thought that he was going to touch her.

A.G. suffered severe emotional trauma. She was frightened of Hugo and was afraid that he was going to hurt her again. She was also worried that Hugo might sexually abuse the boys. (§ 361.5, subd. (i)(3).)

Hugo denied leaving any bruise or mark on the boys when he hit them with a belt, and was unwilling to admit the severity of the abuse he inflicted on them. Although Hugo had engaged in voluntary services, including the completion of two parenting classes and participation in five sessions of a treatment group for sexual offenders, he presented no evidence that he had learned anything from those services. He did not take responsibility for his actions and showed no empathy for the children. Hugo needed treatment to deal with having been sexually abused, himself, as a child, and possibly for his anger, as well.

The paternal grandfather testified that Hugo was appropriate during supervised visits with the boys, and said that the boys called Hugo "daddy" and hugged him. However, Edwin told the social worker that he was afraid of Hugo, and Erick told the social worker that Hugo angered easily and made him cry. When Erick cried, Hugo called him a derogatory name and said "men do not cry." This made Erick sad. In addition, Erick said that he felt bad because Hugo was "real mean" to A.G.

■ For the above reasons, we conclude that there is substantial evidence to support the court's finding that section 361.5, subdivision (b)(7) applied. (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 96 [42 Cal.Rptr.3d 504].) Thus, the court was required to deny services for Hugo unless Hugo proved that reunification would be in the boys' best interests. Hugo made no such showing. Further, the facts outlined above amply support the conclusion that the court did not abuse its discretion in finding that reunification would not be in the boys' best interests. (*In re William B., supra*, 163 Cal.App.4th at p. 1229.)

## DISPOSITION

The judgment is affirmed.

Nares, Acting P. J., and Irion, J., concurred.