Filed 5/14/21  In re Eric L. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| In re ERIC L., a Person Coming Under the Juvenile Court Law. | D078594 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>T.R.,<br><br>    Defendant and Appellant. | (Super. Ct. No. J515067C) |

APPEAL from an order of the Superior Court of San Diego County, Browder A. Willis III, Judge.  Affirmed.

Daniel G. Rooney, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Eliza Molk, Deputy County Counsel, for Plaintiff and Respondent.

T.R. (Mother) appeals from the dispositional hearing regarding her son, Eric L., where the juvenile court did not order reunification services for her. Mother claims the court failed to make sufficient findings to support a bypass of reunification services based on her failure to reunite with Eric's half siblings in a previous dependency proceeding. (Welf. & Inst. Code, § 361.5, subd. (b)(10) & (11).)[1] Mother further claims the court failed to determine whether it was in Eric's best interests to offer her reunification services. We affirm the denial of reunification services.

FACTUAL AND PROCEDURAL BACKGROUND

Mother, currently aged 42, has a long history of drug and alcohol abuse. She has also suffered from various mental illnesses, including bipolar disorder and posttraumatic stress disorder (PTSD), since she was a teenager.

In 2006, one of Eric's half siblings (I.R.) became a dependent of the juvenile court and was removed from Mother's custody. Three-year-old I.R. had been found wandering by himself outside a hotel, dirty and improperly dressed, while Mother was "passed out" in a hotel room from illicit drug use. The San Diego County Health and Human Services Agency (Agency) offered Mother reunification services, including substance abuse treatment and mental health services. Later in 2006, Mother gave birth to another child (S.G.) while she was incarcerated for drug-related offenses. The infant became a juvenile dependent in 2007. Mother failed to make substantial progress in services and stopped contacting the Agency by August 2007. Her parental rights to the half siblings were terminated in 2008.

In July 2010, Mother gave birth to Eric. For the first year or two of Eric's life, Mother and/or Eric's father (Father) cared for the child.

---

[1]     Unspecified statutory references are to the Welfare and Institutions Code.

Thereafter, the parents relapsed on drugs and became homeless. Eric lived in the home of his maternal grandfather until he was 10 years old, principally cared for by his grandfather. In 2019 and on, the grandfather's wife also lived in the home and helped care for Eric.

In 2020,[2] the Agency received several referrals relating to Eric. Mother was reportedly homeless, using drugs, and neglecting to care for him. At the same time, the aging grandfather and his wife were struggling to discipline Eric, who was exhibiting behavioral issues.

In October, Eric's grandfather decided he could no longer care for Eric. The grandfather could not identify any other suitable caregiver, and he welcomed the Agency's involvement in placing Eric elsewhere. The grandfather only had a phone number for Mother and advised that she was "not present in Eric's life." The grandfather also reported that he had been responsible for Eric's care for over ten years, confirmed by Eric himself, who stated, " 'I have lived with my grandfather my whole life basically.' " The Agency was unable to locate Mother or Father and, accordingly, took Eric into protective custody.

In mid-October, the Agency filed a petition on Eric's behalf, alleging he was at substantial risk of serious physical harm due to his parent's willful or negligent failure to provide him with the necessities of life. (§ 300, subd. (b)(1).) The juvenile court made a prima facie finding on the petition and detained Eric in out-of-home care.

Subsequently, the Agency made contact with Mother, who reported she was living in a hotel at the time with her boyfriend. Mother said Eric could stay with her at the hotel and that she was trying to find stable housing. She denied using any drugs but failed to show for a drug test.

_____

[2] Further unspecified date references are to 2020.

3

The jurisdictional and dispositional hearing scheduled in early November was continued and then set for contest. The Agency's jurisdiction/disposition report recommended that Mother "not be offered reunification services based on [section] 361.5(b)(10) and (11)."

Approaching the mid-November timeframe, Mother experienced decompensating mental health and a mental health crisis; she suffered depression, suicidal thoughts, stress, extreme tearfulness, racked thoughts, and irritability. She had several violent fights with her boyfriend while she was intoxicated on drugs; Mother tried to strangle her boyfriend and, on a separate occasion, bit his thumb. For a few weeks, she had been smoking methamphetamine (a " '[d]ime worth' " every three to four days). For the past 30 days, she had been using marijuana and alcohol every day, typically more than two "blunts" and more than a "fifth" of alcohol each day. On November 17, she drank one-half pint of vodka, one-half pint of another liquor, and two "tall cans" of presumably beer. Mother's boyfriend "kicked her out" of their hotel.

Mother checked herself into a mental health crisis center, where she was diagnosed with several mental disorders and substance dependency conditions. For years, she had not been taking medication for her bipolar disorder, and she believed her symptoms had gotten worse. After a few days at the crisis center, Mother discharged herself early, against medical advice and without meeting her treatment goals. According to medical records, Mother had suffered significant traumatic events in her lifetime; had a history of suicide attempts, including an overdose with pills in March; had fallen out of a moving car in August while under the influence of phencyclidine (PCP); and had a history of self-injurious behavior and attacking others who triggered her PTSD.

In early December, the Agency filed a notice of request for compulsory judicial notice of matters within the half siblings' dependency case files, including true findings made on the half siblings' petitions, provision of reunification services to Mother, termination of services, and termination of parental rights.

By February 2021, Mother had not drug tested despite multiple Agency requests, and she did not have housing.  Mother told her social worker she did not have any money or a place to stay.  According to the maternal grandfather, Mother was " 'not going to do anything' " to care for Eric.  The grandfather recalled times when Mother had not followed through, or, she would appear to be " 'clean[ing] up' " her act, but then her situation would deteriorate.  Mother continued to deny she had substance use issues, repeating the common refrain, " 'What do I need treatment for, I don't do substances.' "

In the Agency's assessment, it would not be appropriate to provide reunification services to Mother.  The Agency pointed to her failed reunification with two other children and her continuing "pattern" of conduct, including substance abuse, untreated mental health conditions, inability to provide a stable home environment, and inaction toward addressing the protective issues.  Since his detention, Eric had no in-person contact and little phone contact with Mother, and he was doing fine in foster care.

At the contested adjudication and disposition hearing in February 2021, the juvenile court received the Agency's reports in evidence and took judicial notice of the petitions, findings, and orders in the half siblings' case files.  Additionally, the court heard testimony from Eric and Mother.

All parties stipulated that, if called to testify, Eric would state, "I would like my mother to have the opportunity to get better so I can live with her when it is safe."

Through her testimony, Mother indicated that she and Eric moved in with the grandfather in 2017, the grandfather got married in 2019, Mother did not get along with her stepmother, and thus, Mother moved out while leaving Eric in grandfather's home and care. Mother confirmed she was still homeless, suffered from bipolar disorder and PTSD, and that she had a "nervous breakdown" in November. She had not yet started any individual therapy. Mother admitted she last used methamphetamine in November and had not drug tested for the Agency. Mother stated that she did not need to attend a substance abuse program because the November drug use was a "one-time thing" and she already knew how to stay clean.

Counsel presented their closing arguments, with Mother's counsel requesting an order of reunification services for Mother based on her reasonable efforts to treat her problems.

The Agency's counsel argued in detail why Mother's efforts to treat her problems were not reasonable, including that the same problems resulting in the half siblings' removal recurred despite the Agency's prior offer of services, Mother recently left her treatment at the crisis center and had not reengaged in services, and she had not submitted to drug testing. The Agency's counsel stated, "[Mother] has demonstrated an unwillingness to address her underlying issues." The Agency's counsel further addressed why granting reunification services to Mother was not in Eric's best interests, highlighting her failure to visit him, her lack of cooperation with the Agency, and her admitted opposition to completing a substance abuse program. Counsel concluded, "So the Agency does not believe getting into a program after

admitting to using drugs and then removing yourself from the program is making reasonable efforts to address the issue that led to the [half siblings'] removal."

After considering the evidence and arguments of counsel, the juvenile court found the petition's allegations true by clear and convincing evidence, determined there were no reasonable means to protect Eric without removal from parental care, placed him in foster care, and ordered reunification services for Father only, bypassing services for Mother under section 361.5, subdivision (b)(10) and (11).

DISCUSSION

It is presumed in dependency cases that parents will receive reunification services. (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 95.) Nonetheless, subdivision (b) of section 361.5 "sets forth certain exceptions—also called reunification bypass provisions—to this 'general mandate of providing reunification services.' " (*In re Allison J.* (2010) 190 Cal.App.4th 1106, 1112.) "When the court determines a bypass provision applies, the general rule favoring reunification is replaced with a legislative presumption that reunification services would be ' "an unwise use of governmental resources." ' " (*Ibid.*)

Subdivision (b)(10) and (11) of section 361.5 allow the court to bypass reunification services if the court finds by clear and convincing evidence that (1) the parent had previously failed to reunify with a sibling or half sibling, or parental rights for a sibling or half sibling had been permanently severed; and (2) the parent has not made a reasonable effort to treat the problems leading to the removal of the sibling or half sibling. In assessing a parent's efforts to treat the problem(s) that led to the removal of a child's sibling or half sibling, the juvenile court may consider the duration, extent, and context

7

of the parent's efforts, any other factors relating to the quality and quantity of those efforts, and the degree of progress. (*R.T. v. Superior Court* (2012) 202 Cal.App.4th 908, 914 (*R.T.*).)

"An order denying reunification services is reviewed for substantial evidence." (*R.T.*, *supra*, 202 Cal.App.4th at p. 914.)

On appeal, Mother challenges the adequacy of the juvenile court's findings, claiming the court "did not order the termination of reunification services to Mother under [section] 361.5, subdivisions (b)(10) and (11)," and did not determine whether Mother made reasonable efforts to treat her problems. We conclude the court's findings were sufficient on this record.

After closing arguments at the contested dispositional hearing, the juvenile court credited the Agency's addendum report, expressly referencing Mother's fragile mental state, increased drug and alcohol usage, medication noncompliance, " 'not following up on outpatient provided care,' " and underlying mental health conditions. The court remarked that the Agency had painted a "colorful picture of the family dynamic," and "coupled with the testimony during this court proceeding," gave "credence to the words that are in the addendum report."

Then, regarding reunification services, the court explicitly stated as follows in pertinent part:

> "As to the recommendations and moving forward, the Agency has asked this court to bypass Mother's services based on Welfare and Institutions Code section 361.5(b)(10) and (11) based on the termination of services and parental rights for two older siblings for noncompliance with services.
>
> "The court certainly did look through the documents that were presented in that regard in the notice of request for compulsorily [*sic*] judicial notice of the sibling's file . . . . [W]hat I do gather from that is that Mother was laboring in

2007 . . . in the same conditions she is laboring under in 2020.

"Therefore, this court will adopt the recommendations set forth in the addendum report dated November 30th making each recommendation an order of the court."

Moments later, when discussing the Agency's written recommendations, the court confirmed, "It is the Agency's position that reunification services be terminated for Mother, correct, or bypassed, correct?" The Agency's counsel replied, "Yes. But granted as to Father." The court proceeded to note that it was making a correction to the template wording in the Agency's recommendation number 14, which related to informing "the parents" about the need to participate in court-ordered services within a specified timeframe. The court crossed out the word "parents" and wrote in, "Father." Similarly, the court's written order reflects the provision of reunification services to "the father."

Based on our review of the record, the juvenile court adopted the Agency's position in full and bypassed Mother's reunification services under subdivision (b)(10) and (11) of section 361.5. The court took judicial notice of the half siblings' case files. The half siblings' petitions were based in part on Mother's struggles with substance abuse, mental illness, and inability to provide regular care. The court found she was "laboring under" these same conditions as to Eric. Moreover, the court's modification of certain wording— striking out "parents" and writing "Father" instead—undoubtedly affirms the court's intent to bypass services as to *Mother*. Likewise, the written order directs the Agency to provide services to Father (and not Mother).

The court did not appear to make an explicit finding as to the reasonableness of Mother's efforts to treat the problems that led to the removal of the half siblings. However, the court clearly heard and considered

9

the issue, which was argued by all parties. As we have noted, the court unequivocally adopted the Agency's position to bypass services under subdivision (b)(10) and (11) of section 361.5, observing that Mother's conditions had not changed since Eric's half siblings were removed from her care. Accordingly, the court impliedly found that Mother did not make a reasonable effort to treat the problems leading to removal of the half siblings. (See *In re Y.M.* (2012) 207 Cal.App.4th 892, 918-919 [implying finding where "ample evidence supports the finding" and "[t]he result is obvious from the record"]; see also *In re Lana S.* (2012) 207 Cal.App.4th 94, 107-108 (*Lana S.*) [reviewing implied finding of no reasonable efforts for substantial evidence].)

Substantial evidence supports that Mother had not made reasonable efforts to treat the problems that led to the half siblings' removal. She continued to struggle with drug and alcohol abuse, mental illness, homelessness, and an inability to provide stable care. Mother had years to treat these problems, yet when the Agency received a referral regarding Eric in October, she was not caring for him and could not be located. Mother was homeless and unemployed. Soon thereafter, she experienced drug- and alcohol-fueled fights with her boyfriend, suffered a mental health breakdown, and was "kicked out" of the hotel where she was staying. She did not complete a one- or two-week-long treatment program, left the program without medication, and failed to follow up on her treatment plan. Further, Mother did not visit with Eric in person and failed to drug test. She denied needing any substance abuse treatment. The maternal grandfather, who arguably had the most insight into Mother's abilities, plainly stated that she was " 'not going to do anything' " to provide or care for Eric. The record amply supports that any efforts made by Mother to treat her problems were not reasonable.

10

Where, as here, a bypass provision applies, a court may not order reunification services unless the parent establishes by clear and convincing evidence that services would be in the child's best interests. (§ 361.5, subd. (c)(2).) " 'The burden is on the parent to . . . show that reunification would serve the best interests of the child.' [Citation.] The best interests determination encompasses a consideration of the parent's current efforts, fitness and history; the seriousness of the problem that led to the dependency; the strength of the parent-child and caretaker-child bonds; and the child's need for stability and continuity. [Citations.] A best interests finding also requires a likelihood that reunification services will succeed. [Citation.] 'In other words, there must be some "reasonable basis to conclude" that reunification is possible before services are offered to a parent who need not be provided them.' " (*In re A.G.* (2012) 207 Cal.App.4th 276, 281.)

A parent's failure to respond to previous services is "among the factors indicating that reunification services are unlikely to be successful." (§ 361.5, subd. (c)(4).) We review the court's section 361.5, subdivision (c) determination for abuse of discretion. (*Lana S.*, *supra*, 207 Cal.App.4th at p. 109.)

Here, again, the juvenile court implicitly found it was not in Eric's best interests to provide Mother reunification services. The issue was argued by counsel, and the court entirely adopted the Agency's position. On this record, the denial of reunification services to Mother was not an abuse of discretion. In terminating her services as to Eric's half siblings, the court at the time found that the "extent of progress made toward alleviating or mitigating the causes necessitating placement by [Mother] has been NONE." She was periodically absent from Eric's life and did not visit him in person after he

11

was detained. Eric did not rely on Mother to care for him despite hoping that she would "get better." Her struggles with substance abuse, mental illness, homelessness, and unemployment, were ongoing. Mother failed to complete her most recent treatment program, and she did not drug test even once for the Agency. Indeed, Mother acknowledges on appeal that she "[a]rguably . . . was not willing to do services." The record does not support a finding that reunification services would be likely to succeed.

Mother's primary argument for receiving services is that Father received services and there would be no delay in permanency for Eric. This argument, however, focuses on Mother's interest in reunification, not Eric's best interests. Notably, Eric's guardian ad litem (minor's counsel), who is under a duty to advocate for the child's best interests, opposed reunification services for Mother. Similarly, Eric's grandfather lamented that Mother was unreliable and "does not follow through." The record thoroughly supports a finding that she was unlikely to successfully utilize reunification services, and thus those services would not ultimately inure to Eric's benefit. (See *In re Jesse W.* (2007) 157 Cal.App.4th 49, 66 ["[T]he court's focus was properly on the futility of providing services . . . to a parent who has had no interest in reunifying, regardless of how the other parent is situated."].)

## DISPOSITION

The order is affirmed.


O'ROURKE, Acting P. J.

WE CONCUR:



IRION, J.



GUERRERO, J.