Filed 10/9/23  In re E.S. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re E.S., a Person Coming Under the Juvenile Court Law. | D082104 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. No. EF4484) |
| Plaintiff and Respondent, | |
| v. | |
| R.S. et al, | |
| Defendants and Respondents; | |
| E.S., a Minor, | |
| Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Ana L. Espana, Judge.  Affirmed.

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Appellant, E.S.

Richard L. Knight, under appointment by the Court of Appeal, for Defendant and Respondent, R.S.

Emily Uhre, under appointment by the Court of Appeal, for Defendant and Respondent, M.G.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Natasha C. Edwards, Deputy County Counsel, for Plaintiff and Respondent.

E.S., a child subject to juvenile dependency, appeals from the juvenile court's dispositional order granting reunification services to her father, R.S. (Father). E.S. argues substantial evidence does not support the court's order, nor was it in her best interests for Father to receive services. We affirm the juvenile court's order granting reunification services.

FACTUAL AND PROCEDURAL BACKGROUND

Mother and Father have seven children together,[1] including their newborn daughter, E.S.[2] The family has an extensive history of involvement with child protective services, including 19 referrals in San Diego County and seven referrals in the state of Utah. The referrals detail incidents of domestic violence between the parents and the parents' struggles with substance abuse, as well as allegations of neglect and abuse of the children.

In September 2021, the children were taken into protective custody when Mother was arrested for driving her vehicle under the influence of alcohol with the children in the car. The Agency filed juvenile dependency petitions that detailed this incident as well as Mother and Father's inability to maintain their sobriety. The petitions also discussed Father's failure to participate in the services required by his case plan in a prior dependency

---

[1]    Father is the presumed father of one of the children, X.G., whom Father raised from a young age after the death of her natural father.

[2]    E.S.'s siblings are not the subject of this appeal and are discussed only when relevant.

2

case. The juvenile court made true findings on the petitions and the children were declared dependents of the juvenile court.

During the 2021 dependency case, Father was offered substance abuse treatment, domestic violence services, parenting classes, and mental health services. The Agency reported that Father made "little to no progress" in his case plan, failed to drug test, and inconsistently visited with the children. At the 12-month review hearing in December 2022, the juvenile court terminated Father's reunification services.

In January 2023, a few weeks after Father's reunification services were terminated, Mother and Father had their seventh child, E.S. While Mother was at the hospital following E.S.'s birth, the Agency received a referral that Mother was behaving aggressively and screaming at her nurses. The hospital staff observed her hoarding diapers and formula in her belongings. Although Father was present when Mother yelled at the nurses, he did not react and did not speak to the hospital staff. An Agency social worker met with Mother and Father at the hospital, and they agreed to place E.S. in her paternal grandmother's care as part of a safety plan.

The Agency then filed a petition on E.S.'s behalf alleging that she was at substantial risk of harm because of Mother's and Father's inability to supervise or protect her, noting Mother's hostile behavior toward the hospital staff following her birth. (Welf. & Inst. Code,[3] § 300, subd. (b)(1).) The petition discussed the parents' history of substance abuse and domestic violence that led to the juvenile dependency case involving E.S.'s six siblings. It further alleged that Father tested positive for methamphetamine on

_____

[3]     Unspecified statutory references are to the Welfare and Institutions Code.

January 18, 2023, and that he failed to participate in the services required by his case plan in the prior dependency case.

At the detention hearing, the juvenile court made prima facie findings that E.S. fell within the jurisdiction of the juvenile court and detained her in out-of-home care. The court authorized Father to have liberal supervised visitation and ordered the Agency to provide the parents with voluntary services to effectuate reunification.

Following the detention hearing, E.S. was placed in a foster home after her grandmother indicated she was no longer able to care for her. One of E.S.'s caregivers supervised Father's visitation and documented the nature of his visits. The caregiver reported that Father was excited to see E.S., and that he fed her, changed her diaper, and behaved appropriately. Father told the Agency that E.S.'s caregivers were "awesome and attentive," and that they kept him updated with photographs.

In conversations with the Agency social worker, Father expressed his desire to participate in reunification services. When asked what he needed to do to successfully reunify with E.S., Father stated, "I know I need to do the classes. That is pretty much it." During this period, Father reported working full time and Mother told the Agency that he was paying her rent to prioritize "get[ting] the children back."

In a report prepared for the jurisdiction and disposition hearing, the Agency recommended that the juvenile court deny Father reunification services pursuant to section 361.5, subdivision (b). The Agency cited to Father's failure to participate in services in the dependency case involving E.S.'s siblings, including domestic violence and substance abuse treatment, as well as his positive test for methamphetamine in January 2023. The Agency opined that Father's past poor performance indicated there were no

4

reasonable services that would resolve the protective issues involving E.S., and therefore it was in her best interests to bypass reunification services.

The contested jurisdiction and disposition hearing took place in April 2023. The juvenile court received the Agency's reports in evidence and took judicial notice of the petitions, findings, and orders in the half-siblings' case files. The court also heard testimony from an Agency social worker and Father.

The social worker testified that Father kept in regular contact with her since she became involved in the dependency case involving E.S. She acknowledged that Father indicated his desire to participate in every service available to him in order to reunify with E.S. The social worker told the court that Father was participating in a domestic violence program and a "sexual offenders group."

Father testified he had consistent visitation with E.S. throughout the dependency case, only missing one visit due to illness. He asserted that, since the initiation of the dependency case involving E.S., it has been his intention to participate in every service available to him. Father informed the court that he was attending weekly domestic violence classes and that he had attended five meetings of a sexual offender group. Although Father had not yet started parenting classes, he explained that his enrollment was delayed because an incorrect phone number was provided to the program. The social worker confirmed that the program was provided an incorrect phone number.

When asked whether he believed it was appropriate for the Agency to offer him reunification services, Father responded, "I think at the time [of E.S.'s siblings' dependency cases] I wasn't really—I didn't really have the knowledge of how this can affect my family and myself. I wasn't sure how

critical it was for me to participate in these classes and these groups, how important they were to be able to be reunified or back in touch with my family. I—honestly, I didn't think I took it very serious." He told the court, "[E.S.] has opened my eyes up. I realize these are my kids. I need to be in their life just as much as they need to be in mine. And I just—I think I need to change the way I felt about being in the groups and participating and give it more effort, give it all my effort and not just halfway like I was doing."

In its closing argument, the Agency asked the juvenile court to bypass reunification services for Father pursuant to section 361.5, subdivision (b)(10). The Agency acknowledged Father's participation in domestic violence classes and his testimony in which he expressed his willingness to continue engaging in services. However, the Agency argued Father's progress was minimal and that he demonstrated a lack of insight as to why services were needed. E.S.'s counsel joined the Agency's position, arguing that Father's efforts were minimal and his participation in limited programming did not amount to a "reasonable effort," particularly considering his long history with child welfare services.

After considering the evidence and arguments of counsel, the juvenile court found the petition's allegations true by clear and convincing evidence. The court then ordered the Agency to provide Father with reunification services, explaining the following in issuing its decision:

> "[I]t is the court's intent to offer Father services. And you know, it is—it was very compelling when I was reading the reports, reviewing the information, that he visits—and I heard no problem with that—that he visits regularly and that's pretty good because, frankly, we don't always see that from our parents.
>
> "And yes, he could have done more for today's date, but he is in the D.V. group. He needs to continue in the D.V. group. It has to be part of his case plan. He's in the sex offender group. He has been in five sessions, by his testimony, going once a week. I

6

recognize also that he essentially denies concerns regarding substance abuse, domestic violence, and sex abuse; so I recognize the work is going to be difficult, I think, maybe with him.  But he does appear to be motivated to learn.

"I appreciated his testimony that he recognized that he was not in the best place perhaps to take those prior services as seriously as he should have, and it resulted in termination of reunification services as to his other kids.  So I appreciate that he's learned a very hard lesson from that to do all he can with regard to this child to do those services and put himself in the best place to be a support for the mother or to reunify with his daughter directly.

"I note also that—this was in my mind as well—that the agency is offering services to the mother.  She has had three prior dependency cases as well.  Both of them have quite an extensive history with child welfare services, but I feel that we ought to give the father an opportunity here."

E.S. timely appealed the juvenile court's order granting Father reunification services and the Agency has filed a letter brief joining E.S.'s position on appeal.

## DISCUSSION

It is presumed in dependency cases that parents will receive reunification services.  (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 95 (*Cheryl P.*).)  Nonetheless, subdivision (b) of section 361.5 "sets forth certain exceptions—also called reunification bypass provisions—to this 'general mandate of providing reunification services.' " (*In re Allison J.* (2010) 190 Cal.App.4th 1106, 1112.)  "When the court determines a bypass provision applies, the general rule favoring reunification is replaced with a legislative presumption that reunification services would be ' "an unwise use of governmental resources." ' " (*Ibid.*)

We review a juvenile court's determination that a bypass provision in section 361.5, subdivision (b), applies for substantial evidence.  (See *R.T. v.*

7

*Superior Court* (2012) 202 Cal.App.4th 908, 914 (*R.T.*) ["An order denying reunification services is reviewed for substantial evidence."]; *Cheryl P.*, *supra*, 139 Cal.App.4th at p. 96 ["A court reviews an order denying reunification services under section 361.5, subdivision (b) for substantial evidence."].) We note, however, that at the dispositional hearing, the Agency bore "the burden of proving the threshold issue of whether a bypass provision applie[d]." (*In re T.R.* (2023) 87 Cal.App.5th 1140, 1148.) When the issue on appeal is whether the party who bore the burden of proof met the applicable burden, the substantial evidence standard is weightier. (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528, disapproved on other grounds in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.) In such a case, under the substantial evidence standard, the question "for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law" or, put another way, "whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " (*In re I.W.*, at p. 1528.) With this standard in mind, we conclude the evidence does not compel a finding that Father must be denied reunification services as a matter of law.

Subdivision (b)(10) of section 361.5 allows the court to bypass reunification services if the court finds by clear and convincing evidence that "(1) a juvenile court ordered termination of reunification services for a sibling; (2) termination was ordered because that parent failed to reunify with the sibling; (3) the sibling had been removed from that parent's custody pursuant to section 361; and (4) that parent has not subsequently made a reasonable effort to treat the problems that led to the sibling's removal from that parent." (*In re Gabriel K.* (2012) 203 Cal.App.4th 188, 194.) Here, the

juvenile court took judicial notice of the orders in E.S.'s siblings' dependency files that demonstrated Father's services were terminated because he failed to make sufficient progress toward reunification. The judicially noticed orders establish the first three prongs of section 361.5, subdivision (b)(10): (1) Father was denied reunification services; (2) after failing to reunify with the children; (3) who were in protective custody. The parties disagree, however, as to whether the evidence compels a finding that Father failed to make reasonable efforts to address the issues leading to E.S.'s siblings' removals.

In assessing a parent's efforts to treat the problems that led to the removal of the dependent child's siblings, the juvenile court may consider the "duration, extent and context of the parent's efforts, as well as any other factors relating to the quality and quantity of those efforts. . . ." (*R.T.*, *supra*, 202 Cal.App.4th at p. 914, italics omitted.) "The reasonable effort requirement focuses on the extent of a parent's efforts, not whether he or she has attained 'a certain level of progress.' [Citation.] 'To be reasonable, the parent's efforts must be more than "lackadaisical or half-hearted." ' [Citation.] However, '[t]he "reasonable effort to treat" standard "is not synonymous with 'cure.' " ' " (*Ibid.*)

Here, the juvenile court did not make an express finding that Father made reasonable efforts to treat the problems leading to E.S.'s siblings' removals. But in rendering its decision, the court detailed Father's participation in his domestic violence classes and sexual offender group, and it credited Father's testimony in which he expressed a commitment to engaging with the services. The court's order granting Father reunification services, and its commentary finding that Father was engaged in his case plan, establish an implied finding that he was making reasonable efforts to treat the problems leading to the removal of his other children. (See *In re*

9

*Y.M.* (2012) 207 Cal.App.4th 892, 918–919 [implying finding where "ample evidence supports the finding" and "[t]he result is obvious from the record"]; see also *In re Lana S.* (2012) 207 Cal.App.4th 94, 107–108 [reviewing implied finding of no "reasonable effort" by parent for substantial evidence].)

We conclude substantial evidence supports the juvenile court's implied finding that Father made reasonable efforts to treat the issues precipitating the prior dependency cases. Although Father only participated in three domestic violence classes and five "sex offender group" classes as of the April 2023 hearing, the court explained that it "appreciated [Father's] testimony that he recognized that he was not in the best place perhaps to take those prior services as seriously as he should have, and it resulted in termination of reunification services as to his other kids. So [the court] appreciate[s] that he's learned a very hard lesson from that to do all he can with regard to this child to do those services and put himself in the best place to be a support for the mother or to reunify with his daughter directly." The juvenile court's comments suggest it relied on shifts in Father's perspective and behavior to conclude that further reunification services would not be fruitless, which is relevant evidence for the court to consider. (See *Renee J. v. Superior Court* (2002) 96 Cal.App.4th 1450, 1464 [in considering application of a bypass provision, juvenile court properly considered "significant changes in [the parent's] lifestyle since the removal of [their] other children" to determine whether "further efforts to deal with the problem would not have been 'fruitless.' "].)

Although E.S. emphasizes evidence that would support a contrary conclusion—characterizing Father's efforts as "lackadaisical at best"—it is not the function of this court "to retry the case." (*In re I.W., supra*, 180 Cal.App.4th at p. 1528.) The juvenile court credited Father's testimony and

10

his testimony is sufficient to constitute substantial evidence to support the court's finding. (*In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 119 [" 'The testimony of one witness, even that of a party, may constitute substantial evidence' "].) Dependency cases often pose evidentiary conflicts, and juvenile courts are tasked and uniquely suited with making "highly subjective evaluations about competing, not necessarily conflicting, evidence." (*In re I.W.*, at p. 1528.) We may not reweigh the juvenile court's credibility findings in making these subjective evaluations on appeal. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228; see also *J.M. v. G.H.* (2014) 228 Cal.App.4th 925, 935 [we must "draw all reasonable inferences in support of the court's ruling and defer to the court's express or implied findings when supported by substantial evidence."].)

Further, evidence in the Agency's reports, as well as the social worker's testimony, support the juvenile court's ruling. The social worker informed the court that Father expressed his desire to participate in "every service available to him in order to have the opportunity to reunify with E.S." Father remained in communication with the Agency and consistently visited E.S. And following a January 2023 drug test in which Father tested positive for methamphetamine, his drug tests returned negative results for substances aside from marijuana.

Contrary to E.S.'s argument on appeal, the juvenile court's comments indicating it considered that Mother was offered reunification services despite her own lengthy history with child welfare services, do not compel a contrary conclusion or suggest the court applied an incorrect legal standard. In rendering its decision, the court expressly relied on evidence of Father's participation in his domestic violence and "sex offender group" classes, as well as his testimony professing his commitment to engaging in services.

11

Even assuming the court erroneously considered the extent of the reunification services offered to Mother, we uphold judicial orders " 'if they are correct for any reason, "regardless of the correctness of the grounds upon which the court reached its conclusion." [Citation.] "It is judicial action and not judicial reasoning which is the subject of review . . . ." ' " (*In re Jonathan B.* (1992) 5 Cal.App.4th 873, 876.) We do not perceive the court's order for reunification services to be improper judicial action because it was supported by the substantial evidence previously discussed.

Further, even assuming the bypass provisions in section 361.5, subdivision (b), were applicable, this subdivision "does not require the juvenile court to deny reunification services, but merely gives it the authority to do so. [Citation.] If the court finds by clear and convincing evidence that reunification is in the best interest of the child, it retains authority to order a further round of reunification services. [Citation]" (*In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197.) " ' "A juvenile court has broad discretion when determining whether . . . reunification services would be in the best interests of the child under section 361.5, subdivision (c). [Citation.] An appellate court will reverse that determination only if the juvenile court abuses its discretion." ' [Citation.]" (*In re A.E.* (2019) 38 Cal.App.5th 1124, 1140–1141.)

"The best interests determination encompasses a consideration of the parent's current efforts, fitness and history; the seriousness of the problem that led to the dependency; the strength of the parent-child and caretaker-child bonds; and the child's need for stability and continuity. [Citations.]' " (*In re A.G.* (2012) 207 Cal.App.4th 276, 281.) As we discussed, the juvenile court considered Father's current efforts to treat the issues leading to the dependency of his other children. And unlike the prior dependency cases involving E.S.'s siblings, Father's visitation with E.S. was reportedly positive

12

and consistent.  On this record, we cannot conclude that reunification services were contrary to E.S.'s best interests such that the juvenile court's decision constituted an abuse of discretion.

DISPOSITION

The order is affirmed.


HUFFMAN, Acting P. J.

WE CONCUR:


KELETY, J.


RUBIN, J.