Filed 11/3/23  In re B.B.S. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re B.B.S., a Person Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>A.S.,<br><br>Defendant and Appellant. | F085759<br><br>(Super. Ct. No. JD143824-00)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from an order of the Superior Court of Kern County.  Christie Canales Norris, Judge.

Candice L. Christensen, under appointment by the Court of Appeal, for Defendant and Appellant.

Margo A Raison, County Counsel, and Jennifer E. Feige, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Levy, Acting P. J., Detjen, J., and Peña, J.

Angelina S. (mother) contends on appeal that the juvenile court's dispositional order must be reversed because there is insufficient evidence to support its decision to bypass her for reunification services under Welfare and Institutions Code section 361.5.[1]

## INTRODUCTION

Mother has three children: E.M., T.R., and Baby Boy S. (B.B.S.) (born August 20, 2022).[2] Mother lost her parental rights to E.M. and T.R. on August 29, 2022, nine days after the birth of B.B.S., due to substance abuse and neglect issues. B.B.S. was subsequently removed from mother's care shortly after birth, when he and mother tested positive for amphetamines. The juvenile court denied mother reunification services as to B.B.S. under section 316.5, subdivision (b)(10) and (11) on the basis that mother failed to correct the problems that led to the removal and termination of her parental rights to E.M. and T.R., and subdivision (c) on the basis that reunification services for mother were not in the best interest of B.B.S.

Mother appeals the juvenile court's order bypassing her for reunification services under section 361.5, subdivisions (b)(10) and (11), and (c). We affirm.

## FACTUAL AND PROCEDURAL SUMMARY

### *Removal*

On August 20, 2022, mother gave birth to B.B.S. He was born prematurely at 36 weeks and was cared for in the Neonatal Intensive Care Unit (NICU) due to difficulty latching and feeding at birth.

B.B.S. and mother both tested positive for amphetamines at the time of his birth. Consequently, B.B.S. was removed from mother's care on September 4, 2022, when he was 15 days old.

B.B.S. responded to treatment well in the NICU and mother visited him regularly.

---

[1]    All statutory references are to the Welfare and Institutions Code unless otherwise noted.

[2]    E.M., T.R., and B.B.S. have different fathers and are half siblings.

*Section 300 Petition*

On September 7, 2022, the Kern County Department of Human Services (department) filed a dependency petition, alleging 18-day old B.B.S. came within the provisions of section 300, subdivisions (b) and (j) because mother failed to provide regular care due to substance abuse (§ 300, subd. (b)). The petition further alleged that mother abused or neglected B.B.S.'s siblings, thereby placing B.B.S. at a substantial risk of similar abuse and neglect (§ 300, subd. (j)).

*Detention Hearing*

On September 8, 2022, the juvenile court held a detention hearing. Mother appeared and denied all allegations. The court found B.B.S. within the provisions of section 300, subdivisions (b) and (j).

Mother signed a voluntary case plan and drug test form, agreeing to the recommendation to participate in the same case plan she had in her open case regarding E.M. and T.R., including counseling for parenting and child neglect, substance abuse counseling, a mental health assessment and any recommended treatment, and drug testing.

Mother stated she was currently enrolled in a substance abuse class and provided a letter of verification, which stated that mother completed a substance use disorder assessment on June 17, 2022, and was recommended for recovery services. The letter also stated that mother attended service groups on July 8, July 22, and August 12, 2022, and received individual counseling on July 1, 2022. She stated she was enrolled in a 52-week parenting class that was scheduled to begin September 14, 2022.

*Jurisdictional/Dispositional Reports and Hearing*

On October 20, 2022, the juvenile court held a jurisdictional/dispositional hearing. Mother signed a waiver of rights and submitted on the section 300, subdivision (b) allegations in the petition. The juvenile court sustained the petition and found that B.B.S. was described by section 300, subdivisions (b) and (j).

The report recommended the juvenile court take jurisdiction over B.B.S. under section 300, subdivisions (b) and (j) and recommended denying mother family reunification services.[3]  The report detailed mother's dependency history as follows:

On October 17, 2020, T.R.'s father, Tyler, reported in a police report that mother used 10 oxycodone pills per day.

On December 1, 2020, after two prior unsubstantiated neglect allegations for E.M. and T.R.[4], the department received an allegation of general neglect and caretaker incapacity for E.M. and T.R.  The children were unattended in an alley near their residence for at least 30 minutes, naked except for sagging diapers, and covered in dirt.  No adults were in the residence and there were no clothes or food found in the residence.  The children's dresser drawers were full of rodent feces, the stove flame was found left on, and knives and a methamphetamine pipe were found within the children's reach.  Mother and Tyler were arrested for willful cruelty to a child (Pen. Code, § 273A, subd. (a)) and mother pled no contest.  E.M. and T.R. were removed from mother and Tyler's care.

On February 1, 2021, family reunification services were ordered for mother and Tyler for six months, including counseling for parenting education, substance abuse counseling, and drug and alcohol testing on at least a monthly basis.  On the willful

---

[3]  B.B.S.'s alleged father, B.V. (father), was declared B.B.S.'s biological father and ordered family reunification services for six months, to terminate on August 14, 2023.  The terms of his case plan included random drug testing, and twice weekly two-hour supervised visits with B.B.S.

[4]  The department received an allegation of general neglect for E.M. and T.R. on December 23, 2019, but the allegations were not substantiated.  The department again received an allegation of neglect for E.M. and T.R. on April 23, 2020, but again, no neglect was found.  The April 2020 allegation alleged mother abused opiates and that the children roamed free while she slept.  However, the department found the children were cared for by their maternal grandmother when mother did not care for them.

cruelty charge, mother was sentenced to four years of probation and a 52-week parenting and child neglect class.

At the October 28, 2021 review hearing in E.M. and T.R.'s dependency case, the court learned that Tyler died in May 2021. Mother reported she completed parenting classes in July 2021. However, mother continuously failed to provide proof of counseling. The court found mother continuously failed to complete the court-ordered 52-week parenting and child neglect classes, resulting in an active warrant based on the willful cruelty charges.

On January 28, 2022, a continued contested review hearing was held. The court ordered family reunification services for mother to be terminated.

Mother reported that she began attending substance abuse counseling in May 2022 and was making good progress.

On August 20, 2022, B.B.S. and mother tested positive for methamphetamines at B.B.S.'s birth. B.B.S. was cared for in the NICU because he was premature, born at 36 weeks, and had difficulty feeding and latching. At B.B.S.'s birth, mother disclosed to the department that she had a history of abusing heroin, Percocet, fentanyl, and methamphetamine. She stated that she was using fentanyl about ten times a day until she was arrested when E.M. and T.R. were removed from her care. She stated that was the last time she used fentanyl, heroin, or Percocet. Mother stated that she attempted to remain clean of substances after the children were removed from her care but relapsed with methamphetamine after the death of Tyler because she did not cope well. She reported that she did not abuse alcohol. She stated that prior to the pregnancy, she was using methamphetamine at least once per day for five months, but stated she had stopped using when she found out she was four or five months pregnant with B.B.S. Mother stated that she believed she and B.B.S. tested positive for amphetamines because she used her brother's "vape pen" during labor to help with pain and was unaware it contained methamphetamine.

5.

On August 24, 2022, a warrant for mother's willful cruelty charge was issued in the case involving E.M. and T.R.

On August 26, 2022, mother reported that she expected to enroll in a 52-week parent and child neglect course the next day.

On August 29, 2022, a continued section 366.26 hearing and section 388 modification hearing was held. The court denied mother's section 388 petition. Mother's parental rights to E.M. and T.R. were terminated and the children were declared free from parental control.

### *Contested Jurisdictional/Dispositional Hearing*

On February 14, 2023, the juvenile court held a contested jurisdictional/dispositional hearing. Mother contested the dispositional recommendation to bypass her for reunification services.

The report recommended mother be bypassed for reunification services pursuant to section 361.5, subdivision (b)(10) and (11). The report noted mother had not made subsequent progress in the initial case plan following termination of reunification services and the termination of parental rights for E.M. and T.R.

The report detailed mother's conduct since the October 2022 jurisdictional/dispositional hearing as follows:

#### *Supervised Visits with B.B.S.*

The report noted pleasant monthly supervised visits between mother and B.B.S. However, in October 2022, mother was asked to submit to a test when she arrived at a visit and appeared under the influence of alcohol or drugs and smelled like alcohol. She admitted she had been drinking until 2:00 a.m. that morning, but her drug test was negative for substances.

*Counseling/Classes*

Mother reported she had completed a mental health assessment in November 2022. In December 2022, she reported that she never started counseling.

Mother reported that she enrolled in a substance abuse counseling program that was scheduled to start in December 2022. Mother reported she attended group counseling on Tuesdays and Thursdays and individual counseling on Wednesdays. In December 2022, she reported she was dropped from substance abuse counseling for missing sessions. Mother was told to see the gatekeeper for appropriate placement in a substance abuse counseling program. In January 2023, the department attempted to obtain a progress report for mother from the substance abuse counseling provider, but mother never signed a release of information as instructed.

In November 2022, mother also reported she was dropped from her 52-week parenting class because she missed three classes. She reported that she was only 11 minutes late to the third missed class, but the program would not allow her to attend due to her tardiness. Mother was told to sign up for another 52-week parenting class. In December 2022, mother said she needed a new referral form to sign up for a new class.

In December 2022, mother reported that she completed a parenting and child neglect class.

On January 17, 2023, mother missed an appointment to discuss her case plan progress and did not make contact to cancel or reschedule the appointment.

*Drug Testing*

Mother completed three negative drug tests on August 29, October 9, and October 26, 2022. Mother missed drug tests on October 11, October 14, November 2, November 3, and December 16, 2022, and January 17, January 27, and January 30, 2023. Some of the missed drug tests were from the call-in system, but on December 16, 2022, mother refused to submit to a drug test during face-to-face contact with the department.

7.

Mother reported that she was employed full time and that her work schedule prevented her from drug testing.

*Mother's Testimony*

During the hearing, mother testified that she had recently obtained employment, was living between two homes, and had recently gotten her car repaired. She stated that E.M. and T.R. had been removed because of "[her] actions and not … watching her kids." She acknowledged she was positive for illegal drugs when B.B.S. was born, but stated she believed she had "grown" since her other children were removed. Mother conceded that she had not attended all the counseling that she could have and that she had been dropped from counseling, although she stated that she had attempted to reenroll. Mother also conceded that she failed to drug test on several occasions when requested to by the department. She testified that she had completed an assessment for substance abuse counseling the day prior to the hearing.

During cross-examination, mother stated she had been sober for six months and that the last time she used methamphetamine was when she was in labor with B.B.S. Mother stated she did not remember refusing to drug test, and stated she had transportation issues. However, she acknowledged her mother drove her places and that she received a gas voucher, rather than a bus pass.

*Argument*

Mother's counsel argued that mother had been making reasonable efforts to address the issues that caused B.B.S.'s removal and had been trying to do what the case plan required. Minor's counsel argued mother had not shown reasonable efforts to follow her prior case plan since B.B.S. was born. She noted mother's refusals to drug test, and that she had been dropped from her parenting class and had not reenrolled in substance abuse counseling. County counsel concurred with minor's counsel that mother had not made the required showing of reasonable efforts.

*The Juvenile Court's Findings*

The juvenile court adjudged B.B.S. a dependent pursuant to section 300, subdivisions (b) and (j) and found mother had made no progress in alleviating or mitigating the reasons for B.B.S.'s removal.  The court stated,

> "[O]nce the [d]epartment has shown by clear and convincing evidence the bypass provision applies it shifts to the parent who opposes the bypass.  And they must [prove] by clear and convincing evidence that … reunification is in the child's best interest.

> "And I do have to agree with [minor's counsel].  I just do not see how we get there.  We have negative testing in August and September.  But we have several no-shows, October [11], October [14], and November [2].  And then what was probably the most disappointing in the last supplemental report, they offer to go to her house.  She doesn't respond.  They ask her to test there.  She said she's going to run late for work.  And she declined to test most recently on December [16], January [27] and January [3].  I understand work is important, and I don't expect her to immediately be able to overcome her problems that led to [B.B.S's] dependency.  But we're just seeing a repeat of the behaviors that we've seen in the past children's case and through today.  It would be different if she were still testing.  But if she tests and she was positive, at least she's still going through it.  But just the refusals, the excuses not to test, I just feel like we would be spinning our wheels.  And I just don't see how I can find that it could be in the child's interest[].  So for those reasons the [c]ourt will follow the recommendations of the report."

The juvenile court found mother had made minimal progress in alleviating or mitigating the reasons for B.B.S.'s removal.  Accordingly, the court ordered no family reunification services for mother, finding that section 361.5, subdivision (b)(10) and (11) applied.  Reunification services were ordered for father.  A hearing pursuant to section 366.21, subdivision (e) was scheduled for August 14, 2023.

On February 14, 2023, mother filed a timely notice of appeal.

## DISCUSSION

Mother contends the juvenile court erred in bypassing her reunification services pursuant to section 361.5, subdivision (b)(10) and (11), on the basis that she had not

made reasonable efforts to treat the problems that led to the removal of E.M. and T.R. Specifically, she argues that there was insufficient evidence to find that she had not made reasonable efforts to treat those problems. We disagree.

## I.     Section 361.5, Subdivision (b)(10) and (11)

Here, there is sufficient evidence to support the bypass of reunification services for mother under section 361.5, subdivision (b)(10) and (11).

### A.     *Law*

"As a general rule, when a child is removed from parental custody under the dependency laws, the juvenile court is required to provide reunification services to 'the child and the child's mother and statutorily presumed father.' " (*Jennifer S. v. Superior Court* (2017) 15 Cal.App.5th 1113, 1120 (*Jennifer S.*), citing § 361.5, subd. (a).) However, section 361.5, subdivision (b)(10) and (11), allows the court to bypass reunification services if the court finds by clear and convincing evidence "[t]hat the court ordered termination of reunification services for any siblings or half siblings of the child because the parent … failed to reunify with the sibling or half sibling pursuant to [s]ection 361 and that parent … is the same parent … described in subdivision (a) and that, according to the findings of the court, this parent … has not subsequently made a reasonable effort to treat the problems that led to removal … of that child from that parent …," or "[t]hat the parental rights of a parent over any sibling or half sibling of the child [have] been permanently severed … and that, according to the findings of the court, this parent has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from the parent." (§ 361.5, subd. (b)(10) & (11).

If the juvenile court finds a provision of section 361.5 applies, the court "shall not order reunification for [the] parent … unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child." (§ 361.5, subd. (c)(2).)

"In order to meet the burden to establish, by clear and convincing evidence a lack of reasonable efforts in this regard, child welfare workers must focus on the facts underlying the previous dependency action and its resolution, as well as on any efforts made by the parent *since the sibling removal*." (*Jennifer S.*, *supra*, 15 Cal.App.5th at p. 1126.) Moreover, "[t]he 'reasonable effort to treat' standard 'is not synonymous with "cure." ' " (*K.C. v. Superior Court* (2010) 182 Cal.App.4th 1388, 1393.) "[A] 'parent who has worked toward correcting his or her problems [has] an opportunity to have that fact taken into consideration in subsequent proceedings.' [Citation.] To be reasonable, the parent's efforts must be more than 'lackadaisical or half-hearted.' " (*Ibid.*) "Moreover, not every 'effort by a parent, even if clearly genuine, to address the problems leading to removal will constitute a reasonable effort and as such render these provisions inapplicable. It is certainly appropriate for the juvenile court to consider the *duration*, *extent and context* of the parent's efforts, as well as any other factors relating to the *quality and quantity* of those efforts, when evaluating the effort for reasonableness. And while the degree of progress is not the *focus* of the inquiry, a parent's progress, or lack of progress, both in the short and long term, may be considered to the extent it bears on the *reasonableness* of the effort made.' " (*Jennifer S.*, at p. 1121.)

"A court reviews an order denying reunification services under section 361.5, subdivision (b) for substantial evidence." (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 96.) Substantial evidence exists when the evidence is "reasonable in nature, credible, and of solid value," so that "a reasonable mind would accept [it] as adequate to support [the] conclusion." (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433.) Under this standard of review, we consider the record as a whole, in the light most favorable to the juvenile court's findings and conclusions. (*In re Tania S.* (1992) 5 Cal.App.4th 728, 733–734.) "[W]e do not make credibility determinations or reweigh the evidence." (*Jennifer S.*, *supra*, 15 Cal.App.5th at p. 1121.)

11.

### B.    Analysis

Mother contends there is insufficient evidence to support bypass of reunification services, arguing that "[t]he 'reasonable effort to treat' standard 'is not synonymous with "cure." ' " (*K.C. v. Superior Court*, *supra*, 182 Cal.App.4th at p. 1393.)

However, as previously noted, the juvenile court may consider the " '*duration, extent and context* of the parent's efforts, as well as any other factors relating to the *quality and quantity* of those efforts, when evaluating the effort for reasonableness.' " (*Jennifer S.*, *supra*, 15 Cal.App.5th at p. 1121.)  In the present case, mother's parental rights to E.M. and T.R. were terminated in August 2022.  B.B.S. was also removed from mother's care in August 2022.  Thus, mother had six months to address the problems that led to E.M. and T.R.'s removal after B.B.S. was removed.  (*Id*. at p. 1126 ["child welfare workers must focus on the facts underlying the previous dependency action and its resolution, as well as on any efforts made by the parent *since the sibling removal*"].)

At the time of B.B.S.'s removal, mother and B.B.S. tested positive for amphetamines.  Mother reported that her substance abuse had continued after the removal of her older children, until she was four or five months pregnant with B.B.S.  She stated that she had not used illegal substances since then and did not know she used methamphetamine during labor with B.B.S.

It is undisputed that mother made *some* effort to address her drug problem, at least after the petition involving B.B.S. was filed:  mother submitted three negative drug tests in September and October of 2022, enrolled in parenting classes and substance abuse counseling and reported that she completed her mental health assessment.

However, substantial evidence supports the juvenile court's finding that this effort was not reasonable against the backdrop of her drug history dating back to the removal of E.M. and T.R. from her custody in 2020.  As a threshold matter, mother's effort since the filing of this case—while a commendable start—was not wholehearted:  she subsequently failed to submit to any further drug tests, including refusing to test during face-to-face

contact with the department on December 16, 2022. Additionally, although she signed up for substance abuse counseling and a 52-week parenting course after B.B.S.'s removal, she was dropped from both classes for missing too many sessions, and repeatedly failed to reenroll. She also did not enroll in counseling after her mental health assessment. More significantly, however, mother's six months of minimal effort is a drop in the bucket when viewed in the larger context of an approximately eight-year history of serious and consistent drug abuse. Against this backdrop and given mother's repeated failure to submit to drug testing and to enroll in or attend the classes and counseling required by her prior case plan, the juvenile court properly concluded that mother's efforts to treat the problems requiring E.M. and T.R.'s removal were not reasonable. (See e.g., *Jennifer S.*, *supra*, 15 Cal.App.5th at p. 1124 [in the context of a "long-term substance abuse issue" lasting for years, the father's "minimal efforts" in substance abuse treatment "mere weeks" before a hearing were "not a reasonable effort to treat th[e] problem for purposes of a section 361.5, subdivision (b)(10) bypass"]; *R.T. v Superior Court* (2012) 202 Cal.App.4th 908, 915 [upholding bypass under subdivision (b)(10) and (11) because there was "no evidence in the record that mother, in the month or two of services" provided after second removal, "had engaged in th[e] services in any meaningful way"]; *Randi R. v. Superior Court* (1998) 64 Cal.App.4th 67, 73 [upholding bypass and stating that a child's future "should not be sacrificed" to give a parent "another chance to try to get and stay sober"].) The court's finding is further supported by evidence that mother has repeatedly relapsed after periods of sobriety in the past. This finding is consistent with the conventional wisdom and practical reality that short and recent periods of sobriety are often not enough to counter a long-standing pattern of substance use and relapse. (See, e.g., *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423–424 [200 days insufficient to convince juvenile court that a relapse would not occur]; *In re Amber M.* (2002) 103 Cal.App.4th 681, 686–687 [relapse following 300 days of sobriety].) Thus, substantial evidence supports the juvenile court's finding that the effort

13.

underlying mother's brief period of sobriety after 10 years of drug abuse was not "reasonable."

Mother resists this conclusion, minimizing her drug use and urging us to accept her proffered reasons for her minimal effort to combat her addiction: she attributes her relapse in 2021 to her husband's death, her relapse during labor with B.B.S. by saying that she did not know the vape pen she used contained methamphetamine and did not feel its effects, and downplays the extent to which she failed to fully engage with the treatment program or drug testing by saying it conflicted with her work schedule or that she had transportation problems, despite admitting her mother drives her places and that she received gas vouchers rather than bus vouchers from the department. In doing so, mother asks us to ignore the governing standard of review and reevaluate the evidence in the light most favorable to her, which we may not do. (*In re R.T.* (2017) 3 Cal.5th 622, 633 [we " 'review the record in the light most favorable to the court's determinations' " and leave " 'issues of fact and credibility' " to the trial court]; *In re G.L.* (2014) 222 Cal.App.4th 1153, 1164 [we "presume 'in favor of the [court's] order, consider[] the evidence in the light most favorable' " to the order, and " 'resolv[e] all conflicts in support of the order' "].)

## II. Section 361.5, subdivision (c)(2)

Next, mother contends the juvenile court abused its discretion when it failed to order reunification services under section 361.5, subdivision (c)(2). We disagree.

### A. *Law*

Once the juvenile court determines that a parent falls under section 361.5, subdivision (b)(10) and (11), it shall not order reunification services for that parent "unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child." (§ 361.5, subd. (c)(2).) "The concept of a child's best interest 'is an elusive guideline that belies rigid definition. Its purpose is to maximize a child's opportunity to develop into a stable, well-adjusted adult.' " (*In re Ethan N.* (2004) 122

14.

Cal.App.4th 55, 66.) "[P]recedent supplies certain relevant considerations when making a best interest determination. For instance, '[t]o determine whether reunification is in the child's best interest, the court considers the parent's current efforts, fitness, and history; the seriousness of the problem that led to the dependency; the strength of the parent-child and caretaker-child bonds; and the child's need for stability and continuity.' " (*Jennifer S.*, *supra*, 15 Cal.App.5th at p. 1124.) "A best interest finding also requires a likelihood that reunification services will succeed." (*In re A.G.* (2012) 207 Cal.App.4th 276, 281.) "It is the parent's burden to prove that the minor would benefit from the provision of court-ordered services." (*Jennifer S.*, at p. 1124.) We review a juvenile court's best interest determination for abuse of discretion. (*In re William B.* (2008) 163 Cal.App.4th 1220, 1229.)

### B.      Analysis

Mother contends "[t]here is every reason to believe that reunification services will succeed, given mother's acceptance of responsibility for her actions and her resolve to correct the underlying issues." She argues she has "persevered in her efforts to reunite with [B.B.S.]," and visits him regularly.

Here, however, the juvenile court took into consideration mother's current efforts, fitness and history, the seriousness of the problems that led to the dependency, the strength of the parent-child bonds, and the child's need for stability and continuity. The court stated that when considering these factors, it did not find reunification to be in the best interest of the child. The court noted that mother had been using methamphetamine and other drugs for nearly 10 years, and tested positive for methamphetamine at B.B.S.'s birth. The court also stated that mother had been offered services multiple times and had repeatedly failed to complete counseling and refused to submit to drug testing. The court also noted that she had a history of drug abuse and failure to stay sober, and subjected E.M. and T.R. to abuse and neglect, leading to their removal and her willful cruelty charge. The court further stated that even though she regularly visited B.B.S., and

despite always maintaining to the department that she did not drink alcohol, she came to a visit intoxicated and admitted that she had been drinking alcohol until 2:00 a.m. that morning.

Mother further argues that the quality of the parent-child love and relationships shown during visitation support that reunification is in B.B.S.'s best interest. However, as the court found, "[t]he [child's] bond[] with the mother cannot be the sole basis for a best interest finding." (*In re William B.*, *supra*, 163 Cal.App.4th at p. 1229.)

Mother further contends that the strict time limits of family reunification services "to prevent children from spending their lives in the uncertainty of foster care" (*In re Marilyn H.* (1993) 5 Cal.4th 295, 308) are inapplicable because B.B.S. resides with his paternal grandmother and six months of reunification services have been ordered for father.

Here, however, unlike mother, the juvenile court found at the February 2022 dispositional hearing that father complied with his case plan and had reunification services ordered for another six months. Further, father was not subject to section 361.5, subdivision (b)(10) and (11). Father was not the father of E.M. and T.R. and did not have parental rights terminated for other children as mother had. As discussed above, the rationale of the bypass provisions of subdivision (b)(10) and (11) is that the parent who has already had previous children removed and parental rights terminated has already had an opportunity to begin to reform according to the prior case plan. Accordingly, the standard for ceasing reunification services where the parent has already had other children removed is lower than for a parent without any history of other children already being removed from their care. (§ 361.5, subd. (b)(10), (11).) "[T]here must be a limitation on the length of time a child has to wait for a parent to become adequate. [Citations.] To avoid unnecessary delays in the process the Legislature has directed the juvenile court to 'give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage

to a minor of prolonged temporary placements.' " (*In re Marilyn H.*, *supra*, 5 Cal.4th at p. 308.) As mother already had her parental rights for E.M. and T.R. terminated the same week B.B.S. was removed from her care, and she failed again for six months after his removal to make reasonable progress towards remedying the problems that led to E.M. and T.R.'s removal, mother is not entitled to the same chances at this point as father.

Given mother's history of substance abuse, removal of her other children, and B.B.S.'s young age and need for stability, we conclude the juvenile court did not abuse its discretion when it failed to order reunification services under section 361.5, subdivision (c)(2).

## DISPOSITION

The juvenile court's order is affirmed.